# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | | |
|---|---|---|
| STACEY B. HINES | § | |
| | § | |
| V. | § | W-16-CV-143-RP |
| | § | (Crim. No. W-15-CR-026(1)) |
| UNITED STATES OF AMERICA | § | |

## ORDER

Before the Court are Movant Stacey Bernard Hines's Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 (#31) and the Government's response (#38). Hines is proceeding pro se.

## Background

On February 10, 2015, Hines was charged in a two-count indictment with conspiracy in violation of 18 U.S.C. § 371, and aiding and abetting theft of government property in violation of 18 U.S.C. § 641 and 18 U.S.C. § 2. On April 9, 2015, Hines pleaded guilty to both counts pursuant to a plea agreement. In the plea agreement, Hines agreed to waive his appellate rights, including his right to file a motion under 28 U.S.C. § 2255. Hines also agreed to pay restitution in an amount to be determined by the United States Probation Office. On June 17, 2015, Hines was sentenced to 46 months of imprisonment, three years supervised release, $200 in special assessment fees, and $2,638,736.34 in restitution. Hines did not appeal. On May 27, 2016, Hines filed the instant motion to vacate, set aside, or correct sentence, in which he alleges three grounds for relief based on ineffective assistance of counsel for failing to: (1) engage in adequate plea bargaining; (2) argue

about restitution and valuation discrepancies at sentencing; and (3) preserve the right to appeal. For the following reasons, the Court denies Hines's motion.[1]

## Analysis

### I. Legal Standard

Generally, there are four grounds upon which a defendant may move to vacate, set aside, or correct his sentence: (1) the imposition of a sentence in violation of the Constitution or the laws of the United States; (2) a lack of jurisdiction of the District Court that imposed the sentence; (3) the imposition of a sentence in excess of the maximum authorized by law; and (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996).

Section 2255 is an extraordinary measure; it cannot be used for errors that are not constitutional or jurisdictional if those errors could have been raised on direct appeal. *United States v. Stumpf*, 900 F.2d 842, 845 (5th Cir. 1990). If the error is not of constitutional or jurisdictional magnitude, the movant must show the error could not have been raised on direct appeal and would, if condoned, "result in a complete miscarriage of justice." *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994). In addition, a defendant who raises a constitutional or jurisdictional issue for the first time on collateral review must show both "cause" for his procedural default, and "actual prejudice" resulting from the error. *Placente*, 81 F.3d at 558. A defendant's claim of ineffective assistance of counsel does give rise to a constitutional issue and is cognizable pursuant to Section 2255. *United States v. Walker*, 68 F.3d 931, 934 (5th Cir. 1996).

---

[1] The government argues that Hines's claims are procedurally barred because his allegations are conclusory, but this is not a legitimate argument or procedural bar.

## III. 28 U.S.C. § 2255 and Ineffective Assistance of Counsel

Section 2255 reads, in part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

Hines claims ineffective assistance of counsel for failing to (1) engage in adequate plea bargaining; (2) resolve valuation discrepancies regarding restitution; and (3) preserve the right to appeal. The legal requirements of an ineffective assistance of counsel claim are well known:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).

With respect to the first, "deficient performance," prong of the test, the *Strickland* court went on to say:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.

*Id.* at 689. Indeed, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Id.*

With respect to the second, "prejudice," prong, the court said:

> It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding.

*Id.* at 693 (internal citation omitted).

Instead, the court explained, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

The "prejudice" prong of an ineffective assistance of counsel claim is slightly different in the context of a guilty plea. "With respect to guilty pleas, the prejudice requirement focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000) (quotation omitted). Specifically, Hines "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* (quotation omitted).

### A.     Plea Bargaining

Hines alleges counsel failed to provide him effective assistance during the plea bargaining stage of his case. He asserts that counsel obtained no benefit or stipulation regarding restitution or sentencing range and failed to preserve the right to appeal. Mot. (#31) at 4. His allegations seem to

largely stem from his dissatisfaction with the restitution amount owed. Specifically, he explains that approximately a year prior to his indictment in this case he was offered a plea deal requiring only $1 million in restitution. *Id.* at 7. Hines's counsel at that time (who is not implicated in the instant motion) advised him to reject the offer and told him not to worry because the case would likely only be pursued against Hines's co-conspirator. *Id.* Further, Hines asserts that he only received $16,815 in payment for the stolen property. *Id.* Thus, Hines asserts that the $2.6 million restitution he was ordered to pay is well beyond what he should be required to pay and is indicative of his counsel's ineffectiveness during plea negotiations. *Id.* at 7-10. Hines argues that counsel should have preserved Hines's right to argue about the amount of restitution owed and preserved his right to appeal the amount of restitution. *Id.* at 10.

Counsel has three major obligations to provide effective assistance in plea negotiations: (1) to communicate plea offers (*Missouri v. Frye*, 566 U.S. 134 (2012)); (2) to advise on whether to accept a plea offer (*Lafler v. Cooper*, 566 U.S. 156 (2012)); and (3) to advise on direct consequences of a plea (*Padilla v. Kentucky*, 559 U.S. 356 (2010)). Here, Hines does not assert any facts indicating that his counsel failed to meet these obligations. Instead, Hines appears to argue either that his plea was not knowing and voluntary, or that counsel should have negotiated a better deal.[2]

To the extent Hines is arguing that his plea was not knowing and voluntary, that claim is refuted by the record. At the rearraignment proceedings before Judge Smith, Hines confirmed he had sufficient opportunity to talk to his attorney about the charges against him and any possible

---

[2] It does not appear that Hines is asking the Court to modify his restitution, but to the extent he is, that is not a proper claim in a § 2255 proceeding. *United States v. Hatten*, 167 F.3d 884, 887 n. 5 (5th Cir.1999). A challenge to the restitution or fine portion of a sentence is not a constitutional issue regarding sentencing, and it can only be raised on direct appeal. *Id.*

defenses he might have. Rearraignment Tr. (#38-2) at 9-10. Hines also confirmed he was satisfied with his counsel's legal representation. *Id.* at 34.

The Judge warned Hines about the consequences of his plea. Specifically, after explaining the two counts with which Hines was charged, the Judge stated:

> COURT: A person convicted of both of those counts would face a total maximum possible punishment of 15 years incarceration followed by three years of supervised release, a half million dollars in fines, and $200 in special assessments. Do you understand those possible maximum punishments?
>
> DEFENDANT: Yes, your Honor.

*Id.* at 14. The Judge also explained how punishment would be determined stating:

> COURT: Your case will be referred to the probation office for the preparation of a presentence report. The most important part of that report is the probation officer's recommendation as to the appropriate guideline range for punishment. That's based on a formula that takes into account the offense or offenses to which you're pleading and the relevant conduct surrounding that offense or those offenses. The results of the formula are then expressed in a range of months. As an example of a range of months that I'm certainly not suggesting would apply in any one of these cases, a range of months in a particular case might be 18 to 24. If that were the range in a particular case, that would mean that I would be advised that the appropriate sentence in that case was 18 months incarceration or 24 months incarceration or any number of months between 18 and 24, but I would not be bound by that recommendation. I would have the right to sentence that person to less than 18 months if I thought that was appropriate, or in that hypothetical case I would have the right to sentence that person to more than 24 months if I thought that was appropriate. If I did that, however, and sentenced that person in that hypothetical case to more than 24 months, then he would have the right to appeal that sentence, taking the position that my reasons for doing that were not appropriate. Do you understand how that method of determining punishment essentially works?
>
> DEFENDANT: Yes, your Honor.

*Id.* at 39-40. Hines confirmed he had discussed the sentencing guidelines with his attorney. *Id*. at 41.

The factual basis of the government's evidence was summarized in open court. *Id.* at 18-20. Hines's counsel expressed a disagreement with the factual basis on behalf of Hines, stating

> Judge, the only disagreements we might have are those portions that would indicate that the scheme was Mr. Hines' idea or that he did anything to influence any witness after the scheme was discovered. Otherwise, we have no disagreement, and I don't believe that that affects the validity of the plea.

*Id.* at 20. The Judge then asked Hines whether he agreed with his counsel's statement, to which he replied, "Yes. I do, Your Honor." *Id.*

The plea agreement was also summarized in open court, including the provision that Hines was agreeing to pay restitution in an amount to be determined by the United States Probation Office. *Id.* at 14-16. Hines confirmed he understood the agreement and approved of it. *Id*. The Judge went over the rights Hines was waiving pursuant to his plea agreement, and Hines stated he understood. *Id.* Hines then entered his plea of guilty to both counts. *Id.* at 15-16. Hines confirmed he was pleading guilty freely and voluntarily. *Id.* at 38. He further confirmed he was pleading guilty because he was guilty and for no other reason. *Id.* Hines denied anyone threatened him or forced him into pleading guilty. *Id.* at 39. Hines agreed that no one made any promise to him other than what was in the written plea agreement. *Id.* at 42 Hines also denied anyone making any promise or prediction what Hines's sentence would be. *Id.* at 41-42. Based on the statements Hines made under oath, the Judge accepted Hines's guilty plea and found the plea was made freely and voluntarily. *Id.* at 43.

Hines also asserts that his plea was not voluntary because he was under the influence of psychiatric medication, namely Venoflaxin, and that he was suffering from untreated Post Traumatic

Stress Disorder (PTSD). Mot. (#31) at 14. However, at the hearing his counsel confirmed he had no doubt as to Hines's competence to plead guilty. Rearraignment Tr. (#38-2) at 7. Hines also denied suffering from any mental or physical problem that might prevent him from understanding the charge and the consequences of his guilty plea. *Id.* at 7-8.

As for whether Hines's counsel could or should have negotiated a more favorable plea agreement, that claim does not rise to a constitutional level. As explained above, Hines entered his plea voluntarily, pursuant to the plea agreement. If Hines believed there was a better deal to be made, he was free not to accept the plea agreement offered and go to trial. Hines asserts that he entered into a plea agreement "without any concession from the government." Mot. (#31) at 11. This is simply incorrect, as the plea agreement states that the government is agreeing not to pursue further charges against Hines. *See* Rearraignment Tr. (#38-2) at 14-16. In any event, the record indicates that Hines obtained the benefit of additional charges being avoided that would have likely compounded his sentence significantly. Furthermore, Hines does not allege that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Glinsey*, 209 F.3d at 392. Instead, Hines simply argues that he "would have been better off if he had simply went into court without any counsel at all, and without any plea agreement, and just entered an uncounseled plea of guilty." Mot. (#31) at 10.

As the Fifth Circuit has stated, "a defendant ordinarily will not be heard to refute [his] testimony given at a plea hearing while under oath." *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998). Hines is understandably upset about his significant restitution obligation, considering he could have taken an earlier deal at a much lower restitution amount. However, that does not change the fact he entered into his plea agreement voluntarily, without coercion from his lawyer, and

that he understood that under his plea agreement he agreed to pay restitution in the amount determined by the U.S. Probation Office and ordered by the Court.

More importantly, Hines has not shown the Court that, but for his counsel's alleged failures, he would have insisted on pleading not guilty and going to trial. Thus, Hines has not demonstrated any prejudice resulting from his counsel's alleged deficient performance. The record shows that the government had more than enough evidence to convince any rational jury of Hines's guilt, and that Hines was aware of the evidence against him. Nothing in the record suggests he ever intended to go to trial, or was otherwise improperly induced to plead guilty. Instead, the record shows that Hines was not coerced into pleading guilty, that he understood the charges against him, and that he understood the consequences of his guilty plea. Because Hines has failed to show deficient performance by counsel, or prejudice, his ineffective assistance of counsel claim fails.

### B. Arguing Restitution Amount at Sentencing

Hines further contends he received ineffective assistance of counsel at the time of sentencing. Specifically Hines argues that his counsel failed to force the government to provide testimony regarding the restitution amount and failed to resolve valuation discrepancies regarding the restitution amount. Hines contends that the government indicated it would provide testimony at sentencing regarding the restitution amount and that counsel was ineffective for failing to require them to do so.

Hines appears to be referring to statements made by the U.S. Probation Officer in response to three objections counsel made to the PSR. *See* Obj. to PSR (#26). Hines's counsel objected to the PSR on three grounds: (1) insufficient evidence existed to support the loss amount; (2) the amount of restitution wrongly included the value of items allegedly recovered; (3) insufficient evidence

existed to support the enhancement for obstruction of justice. *Id.* In response to the first two objections, the U.S. Probation Officer answered that "[t]he Government will provide testimony at sentencing to corroborate this information." *Id.* There is no mechanism by which defense counsel can force the government to call witnesses. Further, at the sentencing hearing, the government did not provide any witnesses, and Hines withdrew the objections to the PSR. Sentencing Tr. (#38-3) at 2. Hines did not raise any further objections to the amount of restitution at sentencing–just the opposite–so there was no discrepancy in valuation to challenge. Because Hines has failed to show deficient performance by counsel, his ineffective assistance of counsel claim fails.

Hines also has not shown prejudice. In the context of sentencing, the movant must demonstrate a reasonable probability that, but for counsel's errors with respect to sentencing matters, he would have received less time in prison. *See Glover v. United States*, 531 U.S. 198, 203 (2001); *United States v. Grammas*, 376 F.3d 433, 438 (5th Cir. 2004) (explaining that *Glover*, abrogates the significantly harsh test only in the federal sentencing context). The record reflects the objections to the PSR were withdrawn. Hines has not provided the Court any evidence to show he was entitled to a lesser sentence, instead he only argues about the restitution amount. Hines was sentenced at the lowest end of the recommended range. In light of the facts in this case, there exists no reasonable probability the Court would have imposed a different sentence.

### C. Preserving the Right to Appeal

Hines argues that his counsel failed to preserve his right to appeal. This argument appears to be only an extension of his argument that counsel failed to negotiate a better plea agreement. To the extent Hines is arguing that counsel failed to negotiate strongly enough to preserve an appeal right in the plea agreement, that argument fails as described above. To the extent Hines is

challenging the validity of the waiver of appeal from his plea agreement, his claim is denied as follows.

Waivers of appeal are enforceable where the waiver language in the plea agreement is clear and unambiguous and the defendant knowingly and voluntarily waived his rights. *United States v. White*, 307 F.3d 336, 339 (5th Cir. 2002). "A defendant may waive his statutory right to appeal provided (1) his or her waiver is knowing and voluntary, and (2) the waiver applies to the circumstances at hand, based on the plain language of the agreement." *United States v. Palmer*, 456 F.3d 484, 488 (5th Cir. 2006). For a waiver to be knowing and voluntary, the defendant must know that he had "a right to appeal his sentence and that he was giving up that right." *United States v. Portillo*, 18 F.3d 290, 292 (5th Cir. 1999).

As discussed above, Hines entered his plea agreement voluntarily. In addition, Hines confirmed to the Judge that he understood he was waiving his right to appeal, and that it was "a permanent condition and you can't later change your mind and decide that you would like to appeal your sentence after all or file some other type of application for post-conviction relief. Rearraignment Tr. (#38-2) at 14. In *United States v. McKinney*, the Fifth Circuit found that "because defendant indicated that he had read and understood the plea agreement, which includes an explicit, unambiguous waiver of appeal, the waiver was both knowing and voluntary." 406 F.3d 744, 746 (5th Cir. 2005). Because the plea agreement was Hines's voluntary course of action, counsel did not fail to preserve Hines's right to appeal. Therefore, counsel's overall performance was not deficient, and the counsel that he provided to Hines cannot be said to have fallen below the objective standard for reasonable counsel.

**Conclusion**

Hines has failed to satisfy either prong of the *Strickland* test for ineffective assistance of counsel. Thus, his Motion to Vacate, Set Aside, or Correct Sentence is therefore denied.

An appeal may not be taken to the court of appeals from a final order in a proceeding under Section 2255 "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule 11 of the Federal Rules Governing Section 2255 Proceedings, effective December 1, 2009, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejects a movant's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the denial of Hines's Section 2255 motion on substantive or procedural grounds, nor find that the issues presented are adequate to deserve

encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Thus, a certificate of appealability shall not be issued.

Accordingly,

IT IS ORDERED that Movant Stacey Bernard Hines's Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 [#31] is DENIED;

IT IS FINALLY ORDERED that a certificate of appealability is DENIED.

**SIGNED** on April 10, 2017.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE